## In re estate of HENRY R. WHITE.

[Argued March 16th, 1917. Decided June 18th, 1917.]

Under the amendment of the Orphans Court act (statute of distributions) in 1914 (*P. L. 1914 p. 69*), surviving brothers and sisters take to the exclusion of children and grandchildren of deceased brothers and sisters.

On appeal from a decree advised by Vice-Ordinary Lewis and reported in *87 N. J. Eq. 294.*

*Mr. Arthur B. Seymour,* for the appellants.

*Mr. Clifford L. Newman,* for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

Henry R. White died intestate December 29th, 1914. There survived him two brothers (the present appellants) ; children of a deceased sister; children of a deceased brother; a grandchild of a deceased brother. The prerogative court directed that the estate be distributed, one-fifth to each of the brothers, one-fifth to the children of the deceased sister, one-fifth to the children of the deceased brother and one-fifth to the grandchild of the other deceased brother. The brothers appealed.

The result turns on the construction of the amendment of 1914 (*P. L. 1914 p. 69*) to sections 168 and 169 of the Orphans Court act, paragraph 3 of which reads as follows:

"If there be no husband or widow, as the case may be, then all of the said estate to be distributed equally to and among the children; and in case there be no child, nor any legal representative of any child, then equally among the parents and brothers and sisters, except where the intestate is a minor, in which case all of the said estate shall be allotted to the parents, if living, but if not, then to the brothers and sisters equally."

It is necessarily conceded that if the words of paragraph 3 of section 169, as amended, govern the case, the brothers are entitled to the whole estate. The effort of the respondent is to vary the plain meaning of the words of that paragraph by "reading into it," as the learned vice-ordinary said, a provision that the children of a deceased brother or sister take by representation the parent's share. He found a warrant for this interpolation in the provision of section 168 that the distribution should be just and equal, and to the next of kindred to the intestate in equal degrees, or legally representing their stocks. It is always dangerous to read words into a statute that are not there, as we said in *Blanz* v. *Erie Railroad Co., 84 N. J. Law 35.* It can rarely, almost never, be done, and only when it plainly effectuates the legislative intent and is, as in that case, within a possible construction of words actually used. It can never be done when the language of the act shows that the legislature has considered the subject and omitted the words sought to be interpolated. That is the present case. Paragraph 3 in the act of 1914 answers to paragraphs 3 and 4 of the old act (*Comp. Stat. p. 3875*), but there is a most significant change of language. The old act provided for distribution under paragraph 3 to the next of kindred in equal degree "and their legal representatives as aforesaid;" the words "as aforesaid" refer to the language of section 168, "legally representing their stocks." Paragraph 4 of the old act provided for a distribution "to brothers and sisters and the representatives of them." With these words in both paragraphs of the old act before them, the legislature, in 1914, carefully, almost ostentatiously, omitted them in the new act. They not only dropped them out but dropped them out after using substantially the same words in the very next preceding line of paragraph 3, which provide for the representative of a child. That this omission was no mere oversight appears more clearly when we consider the object of paragraph 3. The old act, in paragraph 4, gave brothers and sisters and the representatives of them an equal share with the mother. The new act, paragraph 3, gives the brothers and sisters an equal share with the parents, except where the intestate is a minor. If the legislature had added the words which the vice-ordinary has read into

the act, it would have provided for a distribution equally among the parents and brothers and sisters and the representatives of them. It could hardly be meant to allow representatives of parents to share since the brothers and sisters and representatives of brothers and sisters would necessarily be the representatives of parents also; yet the legislature by coupling parents with brothers and sisters has shown that they were to be treated alike; they are to share equally. For this there is reason in the fact that parents and brothers and sisters form a family group. But it could hardly have been meant to compel a father who, before this legislation took the whole estate, to share, not merely with his wife, his children, and in case of divorce and remarriage, with his wife's children, but with his children's children to the remotest degree. This result was avoided by the legislature when it abandoned the idea of representation. No argument can be drawn from the provision of section 168 that the distribution shall be just and equal; for, as we said in *Smith* v. *McDonald, 71 N. J. Eq. 261*, any distribution authorized by the statute would be just; changes in old-established rights of inheritance are becoming frequent and no one would be so bold as to suggest that the rule of the legislature can be challenged as unjust because novel. Is it unjust to deprive the father of his former right to take the whole of the child's personal property; and shall we therefore say that the word "parents" in the new act does not mean parents? We must read the law as the legislature makes it, even if it conflicts with ideas of justice that have prevailed for centuries. Our whole scheme of inheritance taxes rests on the theory that the right to inherit is the gift of the legislature, not a natural right. The words which it is proposed to interpolate mean representation to the remotest descendant of a brother and sister, and would not be limited in the same way that the right of representation had been limited by the wisdom and sense of justice of the Roman jurisprudence as well as of our own until 1899, as we pointed out in *Smith* v. *McDonald*. Justice, the old idea of justice, at least, excluded representation beyond brothers' and sisters' children. The construction of the prerogative court opens the door to a contest of a testator's will by descendants of nephews or nieces who have

nothing to lose and in whom the testator could have little interest at best. Nor do we derive any help from the use of the word "equal" since a distribution *per stirpes, i. e.,* by representation, is distinguished from a distribution *per capita* by the very fact of inequality between individuals. Nor do the words "representing their stocks" help us, since in the case of nephews and nieces and other next of kin, there had been no representation among collateral beyond brothers' and sisters' children for centuries prior to 1899. The words of section 168, as to representation of stocks, had never been applicable except in that limited way to the next of kin before the omission of the proviso in that year. *Smith* v. *McDonald, 71 N. J. Eq. 261, 262.* All that the legislature did in 1914 was to take away representation of brothers and sisters, perhaps because the amendment of 1899 threatened the dissipation of estates in small fragments among persons not the next of kin of the decedent and in most cases unknown to him, by allowing them to share with parents; perhaps because it was realized that nephews and nieces were a degree more remote than brothers and sisters and still more remote than parents; while grandnephews and grandnieces were still further removed. It would be a step backward for us to read into the statute words that the legislature has taken pains to omit. The legislation of 1899 is a precedent to the contrary. The legislature in that year omitted from paragraph 2, as it then stood, the proviso "that no representation shall be admitted among collaterals after brothers' and sisters' children." The omission caused serious difficulty in *Smith* v. *McDonald,* but no one was hardy enough to suggest that we should interpolate words the legislature had omitted in order to make the act correspond with our ideas of justice and equality. Whatever argument in favor of the justice of a method of distribution can be drawn from its antiquity and continuous and unbroken existence had to give way then as now to the will of the legislature. The decree must be reversed and the record remitted in order that a decree may be entered dividing the estate equally between the two surviving brothers. Costs will properly be paid out of the estate.

*For affirmance*—KALISCH, BLACK, WHITE, WILLIAMS—4.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, HEPPENHEIMER, TAYLOR, GARDNER—9.